UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROGER D. CORDELL,<br><br>Plaintiff,<br>v.<br><br>CASANDRA HOWARD,<br>HERBERT P. BEAM, JOHN ASARE,<br>and KARL BERNHARD,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>NO. 10-10879-NMG |

**REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT**

August 1, 2013

DEIN, U.S.M.J.

## I. INTRODUCTION

At all times relevant to these cross-motions for summary judgment, the plaintiff, Roger D. Cordell ("Cordell"), was incarcerated at the Federal Medical Center Devens in Ayer, Massachusetts ("FMC Devens"). By his Amended Complaint (Docket No. 7) ("Compl."), Cordell asserts that the defendants, Casandra Howard ("Howard"), Karl Bernhard ("Bernhard"), Herbert P. Beam ("Beam"), and John Asare ("Asare"), are liable under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.[1] According to

[1] This is the plaintiff's second challenge to the medical treatment he received at FMC Devens since his arrival there on or about November 30, 2005. Details concerning Cordell's 2007 Bivens action against FMC Devens personnel can be found in this court's June 7, 2012 Report and Recommendation on Defendants' Motion to Dismiss or, in the Alternative, for Summary

Cordell, the defendants violated his constitutional rights by, inter alia, overdosing him with medication, falsifying his medical records by fabricating illnesses in order to cover up the alleged overdoses, and refusing to provide him with emergency medical care.

This matter is presently before the court on the "Defendants' Motion for Summary Judgment" (Docket No. 37), by which the defendants are seeking summary judgment on all of the plaintiff's claims. Also before the court are the plaintiff's cross-motions for summary judgment (Docket Nos. 34, 43). While the allegations of Cordell's Amended Complaint were sufficient to withstand a motion to dismiss, the medical records on which all parties rely defeat the plaintiff's claims. Therefore, and for the reasons set forth herein, this court recommends to the District Judge to whom this case is assigned that the defendants' motion be ALLOWED and that Cordell's motions be DENIED.

---

Judgment and Plaintiff's Cross-Motion for Summary Judgment (Docket No. 28), which was adopted by the District Judge on July 20, 2012 (Docket No. 31). The First Circuit had affirmed the dismissal of Cordell's earlier case, ruling in its Judgment in relevant part:

> Assuming for purposes of this appeal that the myriad medical conditions to which Cordell's pleadings make reference constitute a serious medical condition, he has not alleged deliberate conduct that would be sufficient to establish an Eighth Amendment violation. He does not, and cannot, contend that he has lacked medical care. Indeed, his complaint and the attached records are replete with instances of medical attention, testing, treatment, calibration, and monitoring. The complaint states only Cordell's personal view that he has not been appropriately treated. In and of itself, this is insufficient to state a constitutional claim under Bivens. See Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) (per curiam).

Cordell v. Sabol, No. 08-1986 (1st Cir. Mar. 20, 2009) (Docket No. 39 at Ex. B).

## II. STATEMENT OF FACTS[2]

The following facts relevant to the cross-motions for summary judgment are undisputed unless otherwise indicated.

Cordell was transferred to FMC Devens on November 30, 2005, and remained there until his discharge on June 3, 2009. By his complaint, Cordell contends that the defendants have fabricated ailments, adding chronic obstructive pulmonary disease, coronary artery disease, congestive heart failure and pulmonary hypertension to his medical records. (See, e.g., Docket No. 34 at 1, 3).[3] He also contends that the defendants overdosed him with Coumadin, his blood thinning medication. (See, e.g., Docket No. 43 at 1). Finally, he complains generally that the defendants refused to provide him with "emergency treatment of an outside hospital," thereby leaving him in "extreme relentless pain" and in fear for his life on several occasions. (Docket No. 43 at 1).

In response, the defendants have submitted detailed affidavits analyzing Cordell's extensive medical records, along with some of the records themselves. The affidavits

---

[2] The facts are derived from the following: (1) the defendants' statement of undisputed facts found in the Defendants' Memorandum in Support of Their Motion for Summary Judgment ("DF") and the exhibits attached thereto ("Def. Ex. __") (Docket No. 39); (2) plaintiff's "Motion to Compel and, or, Summary Judgment" and attached exhibits ("Pl. Mem.") (Docket No. 34); (3) plaintiff's supplemental motion for summary judgment and attached exhibits ("Pl. Supp.") (Docket No. 43).

[3] These are the conditions Cordell has mentioned in his summary judgment papers, although the Amended Complaint cites to other conditions as well. Even if not addressed specifically herein, however, all conditions which Cordell claims to have been fabricated were diagnosed prior to his transfer to FMC Devens and his claim that the records were fabricated must fail for the reasons detailed herein, regardless of the condition at issue.

include the Declaration of Herbert P. Beam, M.D., Medical Officer (Def. Ex. A) ("Beam Decl."), a medical officer at FMC Devens and a defendant in this case whose initial affidavit covers the period November 2005 through April 2008; Dr. Beam's Supplemental Declaration (Def. Ex. C) ("Beam Supp. Decl."), which primarily focuses on the period of April 2008 through Cordell's release on or about June 3, 2009 (Beam Supp. Decl. ¶ 3); and the Declaration of Joseph M. Weinstein, M.D. (Def. Ex. D) ("Weinstein Decl."), a cardiologist who reviewed all of Cordell's medical records, and offered an expert opinion.[4] No attempt will be made herein to recite all the information contained in these detailed affidavits. Rather, this court will focus only on the most critical facts.

**Cordell's Medical Condition Prior to Transfer to FMC Devens**

Dr. Beam summarized Cordell's medical condition upon his arrival at FMC Devens as follows:

> Mr. Cordell presented himself to FMC Devens with the following diagnoses: antithrombin III deficiency, chronic hepatitis C, cardiomyopathy (non-ischemic), congestive heart failure, coronary artery disease, chronic obstructed pulmonary disease, psoriasis, recurrent deep venous thrombosis and pulmonary emboli, partial complex seizure disorder, hyperlipoidemia, and chronic pain syndrome.

---

[4] Dr. Weinstein is Board Certified in Internal Medicine, Cardiovascular Diseases and Nuclear Cardiology. He is Chairman of the Department of Medicine at the Good Samaritan Medical Center in Brockton, Massachusetts and the Medical Director at Steward Medical Group in Easton, Massachusetts. (Weinstein Decl. ¶ 1). He had access to documents which reflected Cordell's medical treatment before, during and after his incarceration at FMC Devens. (Id. ¶ 2).

(Beam Decl. ¶ 4; see also Weinstein Decl. ¶¶ 4-5, 7-10). Thus, contrary to his present assertion, Cordell's medical records establish that he suffered from chronic obstructive pulmonary disease, coronary artery disease, congestive heart failure and pulmonary hypertension before his admission to FMC Devens.

The medical records also defeat Cordell's claim that the defendants improperly treated his antithrombin III deficiency by overdosing him on Coumadin. Antithrombin III deficiency results in a condition where the blood does not coagulate, which can cause recurrent thrombosis. (Beam Decl. ¶ 6). Therefore, Cordell's antithrombin III deficiency required anticoagulation monitoring and medication. (Id. ¶¶ 6-7). "This condition is monitored through International Normalized Ratio ("INR") testing to determine the inhibition of the coagulation factors and is typically treated with Coumadin (Warfarin)." (Id. ¶ 6). Cordell was transferred to FMC Devens from FMI Marianna in Marianna, Florida because of the problems he was having regulating the anticoagulation medication. (Id. ¶¶ 3,5). As described below, Cordell's medical records establish that he was continuously monitored at FMC Devens and that his medications were adjusted as needed.

**Cordell's Coumadin Treatment at FMC Devens**

There is an "Anticoagulation" or "Coumadin Clinic" at FMC Devens where the 50 or so inmates taking Coumadin are followed. (Id. ¶ 7). This clinic is staffed by two specially trained Physician Assistants and all cases are monitored and reviewed by one of the four Staff Physicians. (Id. ¶¶ 7-8). During his treatment at FMC Devens, Cordell's

target INR was 2.5-3.5. (Id. ¶ 8; Beam Supp. Decl. ¶ 5). INR is very sensitive to dose changes, as well as to diet and activity. (Weinstein Decl. ¶ 6). In addition, Coumadin's efficacy "may vary depending on the way Coumadin is metabolized (genetic variation), other medications and the amount of vitamin K that is ingested in the diet." (Id. ¶ 13). Between December 6, 2005 and June 2009, Cordell's INR levels were consistently monitored at a near weekly basis and at times were monitored several times throughout the week. (Beam Decl. ¶¶ 8-43; Beam Supp. Decl. ¶¶ 3-4). In addition, Cordell was seen at Health Alliance Hospital in Leominster, Massachusetts on October 30, 2007, where his condition was confirmed and treatment was approved. (See Weinstein Decl. ¶ 82). Furthermore, on October 28, 2008, the Hematology Clinic at Burbank Hospital in Fitchburg, Massachusetts recommended that the anticoagulation therapy provided by FMC Devens be continued, and confirmed that Cordell's goal was to keep the INR between 2.5 and 3.5. (Beam Supp. Decl. ¶ 5).

Despite all this monitoring, throughout Cordell's time at FMC Devens, Cordell's INR level would vary quite drastically, ranging from a low of 0.0 to a high of 11.5. (See Beam Supp. Decl. ¶ 4; Weinstein Decl. ¶¶ 5-121). Contemporaneous records were kept of the monitoring that took place, in which it was reported that Cordell had on occasion "self held" his medication, or refused to take his Coumadin. (See, e.g., Weinstein Decl. ¶¶ 46, 93-94, 97-98). He was also known to "hoard pills and then take large amounts all at once to increase his INRs to dangerous levels." (Id. ¶ 126). Dr. Beam concluded that "[t]he only explanation for the wide variation in this patient's INR results and in his

Coumadin dosing alterations to accommodate those results is Mr. Cordell's lack of compliance or dietary indiscretion (consumption of foods rich in Vitamin K), as well as stopping the medication for dental procedures." (Beam Decl. ¶ 45) The same conclusion was reached by Dr. Weinstein, the independent medical reviewer. (Weinstein Decl. ¶ 132). There is no evidence that FMC Devens failed to address Cordell's fluctuating INR levels. Rather, the record reflects that his Coumadin was adjusted regularly, as needed.

**Confirming Diagnoses and Outside Medical Examinations**

A review of Cordell's medical records further defeats his conclusory assertion that the defendants fabricated Cordell's medical diagnoses. Prior to his arrival at FMC Devens, Cordell's medical records "clearly" indicated that he suffered from congestive heart failure, chronic obstructive pulmonary disease, coronary artery disease and hyper-tension, as well as a myriad of other conditions. (Beam Supp. Decl. ¶ 13). Subsequent testing confirmed these diagnoses. For example, on October 11, 2006, a pulmonary function test was performed on Cordell, which resulted in a showing of levels consistent with severe restrictive lung disease as well as a peripheral obstruction. (Weinstein Decl. ¶ 53). This confirms the existence of Cordell's chronic obstructive pulmonary disease. (Id.). On January 29, 2007, Cordell was brought to an outside facility, Health Alliance Hospital in Leominster, Massachusetts, for myocardial perfusion studies. (Id. ¶ 61). These studies showed indications of Cordell having suffered a prior heart attack. (Id.). In addition, Cordell was seen by an outside cardiologist, Dr. Mercadanti, in November

2006 and again on May 14, 2008. (Beam Supp. Decl. ¶ 13). In the intervening time, Cordell underwent a nuclear stress test. (Id.). The results of these examinations and tests were consistent with Cordell's congestive heart failure, chronic obstructive pulmonary disease, coronary artery disease, and hypertension diagnoses. (Id.).

The medical records also undermine Cordell's conclusory assertion that he was left in pain and denied medical treatment for serious conditions. For example, in addition to the outside visits described above, on November 25, 2008, Cordell was evaluated and treated at Health Alliance Hospital in Leominster for bilateral lower extremity pain. (Weinstein Decl. ¶ 119). Sometime prior to December 5, 2008 and lasting until April 9, 2009, Cordell was treated for ulcerations on both legs as a result of previous blood clots. (Beam Supp. Decl. ¶ 8). He was sent to the wound care clinic at FMC Devens and seen every three to seven days until the wounds were all closed. (Id.). There is no evidence that Cordell had any medical conditions that went untreated.

Cordell was released from FMC Devens to a halfway house in June 2009 (Beam Supp. Decl. ¶ 14). At that time, he was in stable medical condition. "His exit medical evaluation indicated that his anticoagulation therapy was as good as possible under the circumstances, his heart condition was not symptomatic, his lower extremity ulcerations were healed, and his psoriasis was under reasonable control." (Id.).

**Cordell's Medical Submissions**

Cordell has submitted some medical records from the Tennessee Valley Health Care Service, which were generated following his discharge from FMC Devens and establish that the plaintiff continued to receive extensive medical treatment after his release. (Docket No. 34-2). Cordell points to these records as establishing that he was in better physical condition than at FMC Devens and he offers these records as proof that the defendants fabricated his medical records. These records, however, do not support Cordell's argument.

The records recite Cordell's medical history as including chronic leg pain, seizure disorder, hyperlipidemia, HTN, recurrent VTE's, antithrombin III deficiency, depression and syncope. (Docket No. 34-2 at p. 6 of 24). An echocardiogram conducted on October 6, 2011 was abnormal. (Id. at p. 10 of 24). He continued to complain of chest pain into 2012. (Docket No. 34-3 at p. 3 of 18). A CT of his chest on August 23, 2012 showed that his "[l]ungs were mildly emphysematous, with mild cystic/bullous changes, mainly in the right upper lobe" and other signs of "interstitial lung disease." (Id. at pp. 3-4 of 18). These medical records do not establish that the defendants fabricated any conditions from which Cordell suffered. (See Weinstein Decl. ¶¶ 130-131).

**Summary of Medical Records**

Dr. Weinstein summarized Cordell's medical records and treatment as follows:

> 132. After careful review of the medical records, the care and treatment provided to Roger Cordell by Carolyn Sabol, Warden Barren, Mrs. Howard and John Seay complied with the standards of

care required of the average providers caring for a patient with anti-thrombin III deficiency and treatment with Coumadin. The standard of care for the treatment of antithrombin III deficiency was oral anticoagulation with Coumadin. The patient was treated with Coumadin and was monitored with serial determinations of his international normalized ratio. It is clear that Roger Cordell's INR fluctuated significantly during his treatment at FMC Devens. The etiology of the significant fluctuations appears to be multifactorial. The most important reason for the variations in the international normalized ratio (INR) was the patient's own noncompliance. The patient at times would refuse to take Coumadin and there is evidence to suggest that the patient would hoard the medication and take an intentional overdose. The patient was counseled on the importance of compliance on multiple occasions. The patient was evaluated by hematologists at Health Alliance Hospital on October 30, 2007 and on October 28, 2008. The recommendations of the outside hematologists included continued use of Coumadin to maintain an INR of 2.5-3.5. The careful and frequent attention shown to Roger Cordell by the medical staff at FMC Devens clearly shows that they were attentive to the medical needs of the patient and they endeavored to care for his medical problems. The use of medical testing, the utilization of outside consultants when needed and the frequency of the interactions with the medical department at FMC Devens clearly disprove any notion that there was an indifference to the patient's medical problems. The record clearly documents that the staff at FMC Devens appropriately cared for Roger Cordell and were attentive to his medical problems and clinical conditions.

133. Roger Cordell continues to have multiple medical problems which include anti-thrombin III deficiency, chronic obstructive pulmonary disease, congestive heart failure, status post multiple episodes of deep venous thrombosis, status post multiple episodes of pulmonary embolism, status post Greenfield filter placement, cardiomyopathy, gastroesophageal reflux disease, psoriasis, hyperlipidemia, partial complex seizure disorder, depression, hepatitis C and chronic venous stasis disease. A letter authored by Dr. Walter Martin of Lakeland Florida on January 6, 2005 documented the nonischemic cardiomyopathy, anti-thrombin III deficiency, chronic obstructive pulmonary disease and gastroesophageal reflux disease (Bates 00217). The patient was noted to have a life expectancy of less than one year at that time. It

> is a testimony to the excellent care provided at FMC Devens that Roger Cordell has survived the last 8 years since that letter was written. There is no evidence that any diagnoses were fabricated, and my review of the medical records confirms the presence of the Hepatitis C (Bates 305), COPD (Document 34-3, Page 4 of 18), and congestive heart failure and cardiomyopathy (Bates 296).
>
> 134. Finally, Roger Cordell was noted to have significant pain prior to his entry into the federal prison system. The patient was maintained on morphine sulfate and oxycodone prior to his admission to the federal prison system. There is no evidence to suggest that the patient's pain occurred as a result of his time at FMC Devens or as a result of his treatment with Coumadin for antithrombin III deficiency. In fact, use of Coumadin and INR's that are sub-therapeutic or super-therapeutic are not associated with pain.
>
> 135. In summary, the care provided to Roger Cordell at FMC Devens complied with the standard of care required for treatment of congestive heart failure, chronic obstructive pulmonary disease, psoriasis, anti-thrombin III deficiency, hepatitis C, hypertension, hyperlipidemia, seizure disorder, and depression. There is no evidence to suggest that the patient's anticoagulation deviated from the standard of care. Furthermore there is no evidence to suggest that the medical records were falsified, and there is ample documentation supporting the diagnosis of hepatitis C, cardiomyopathy, chronic obstructive pulmonary disease, and hypertension. The patient had a chronic pain syndrome requiring extended-release morphine and oxycodone prior to his entry into the federal prison system.

(Weinstein Decl. ¶¶ 132-135). Additional facts will be provided below where appropriate.

## III. ANALYSIS

### A. Standard of Review

#### 1. Summary Judgment

Summary judgment is appropriate when the moving party shows, based on the discovery and disclosure materials on file, and any affidavits, that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation, and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require a trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994). Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. Id. (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). "'When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56.'" Ford v. Clarke, 746 F. Supp. 2d 273, 285 (D. Mass. 2010) (quoting Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991)).

**2. Deliberate Indifference**

Cordell has brought claims against all of the defendants for deliberate indifference pursuant to 42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). In the instant case, it is undisputed that the defendants were acting under color of state law. Thus, the issue is whether there was a violation of Cordell's constitutional rights.

The Eighth Amendment imposes duties on prison officials to provide "humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994). Among those duties is the duty of prison officials to

"ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ." Id. (emphasis added). "When, as here, a convict claims that state prison officials violated the Eighth Amendment by withholding essential health care, he must prove that the defendants' actions amounted to 'deliberate indifference to a serious medical need.'" DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir. 1991) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976)). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104, 97 S. Ct. at 291 (citation omitted). This is so because "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose" and is "inconsistent with contemporary standards of decency . . . ." Id. at 103, 97 S. Ct. at 290 (citations omitted).

Deliberate indifference has both an objective and a subjective element, although at times "these components may overlap or merge." DesRosiers, 949 F.2d at 19. The plaintiff "must show [he had] a serious medical need" to satisfy the objective element of the inquiry, and "he must prove the defendant's purposeful indifference" to that need to satisfy the subjective element. Sires v. Bowman, 834 F.2d 9, 12 (1st Cir. 1987).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Mahan v. Plymouth County House of Corr., 64 F.3d 14, 18 (1st Cir. 1995) (quotations and citation omitted). "The requisite

state of mind may be manifested by the officials' response to an inmate's known needs or by denial, delay, or interference with prescribed health care." DesRosiers, 949 F.2d at 19.

Evidence that shows "substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment [is] insufficient to prove a constitutional violation." Ruiz-Rosa v. Rullán, 485 F.3d 150, 156 (1st Cir. 2007). Rather, deliberate indifference "may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'" Id. (quoting Feeney v. Corr. Med. Servs, Inc., 464 F.3d 158, 162 (1st Cir. 2006)). Thus,

> [w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

Farmer, 511 U.S. at 842, 114 S. Ct. at 1981 (internal citations omitted).

Finally, "[a] state-of-mind issue such as the existence of deliberate indifference usually presents a jury question. However, where there is no evidence of treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional, or evidence of acts or omissions so dangerous (in respect to health or safety) that [the] defendant's knowledge of a large risk can be inferred, summary judgment is appropriate." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (quotations and citations omitted).

**B. Alleged Constitutional Violation**

All of the pending motions for summary judgment raise the issue whether the defendants are liable under 42 U.S.C. § 1983 for acting with deliberate indifference to Cordell's serious medical conditions by overdosing him with medication, falsifying his medical records and failing to provide him with emergency medical treatment. Not only do the medical records which were created contemporaneously with Cordell's medical exams defeat his claims as a matter of fact, but the record also fails to support a contention that any shortcomings in the treatment Cordell received rose to the level of a constitutional violation as a matter of law. Consequently, this court recommends that Cordell's motions for summary judgment be denied and the defendants' motion for summary judgment be allowed.[5]

It is undisputed that Cordell was monitored regularly at the Coumadin Clinic, his INR levels were checked regularly, and his medication was adjusted as needed. In addition, Cordell was seen in outside clinics, which reviewed his treatment and found it to be appropriate. As the First Circuit has already ruled in Cordell's first § 1983 case against FMC Devens, at most the record "states only Cordell's personal view that he has not been appropriately treated. In and of itself, this is insufficient to state a constitutional

[5] In light of this analysis, this court declines to address the defendants' arguments, made in footnotes, that Dr. Howard cannot be sued in her official capacity or under a theory of respondeat superior (Docket No. 39 at 5 n.5), that the defendants are entitled to qualified immunity (id. at 17 n.10), that the complaint fails to state a constitutional violation (id.), or that the plaintiff failed to exhaust his administrative remedies. (Id. at 17 n.11).

claim under Bivens." Cordell v. Sabol, No. 08-1896 (1st Cir. Mar. 20, 2009) (Def. Ex. B) (citing Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) (per curiam)).

With respect to Cordell's contention that he was overmedicated by the defendants, this claim must fail as it is not supported by the record. There is no evidence that any of the defendants actually overmedicated Cordell, much less that any of them had the requisite state of mind to support his claims for deliberate indifference. See DesRosiers, 949 F.2d at 19 ("In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain."). "Any conclusion regarding the defendants' state of mind must rest on observable actions. None have been presented that demonstrate anything more than carefully thought-out medical decisions." Sires, 834 F.2d at 13. Moreover, if Cordell was overmedicated by any of the defendants, the record at most would support a finding of negligence (which this court does not find). However, as detailed above, negligence does not support a finding of a constitutional violation. Ruiz-Rosa, 485 F.3d at 156.

There also is no evidence to support Cordell's contention that the defendants falsified his medical records. Since his records before his admittance to FMC Devens revealed chronic obstructive pulmonary disease, coronary artery disease, congestive heart failure and pulmonary hypertension (as well as any other condition which he now contends was fabricated), it is clear that these conditions were not fabricated by FMC Devens personnel. Moreover, the medical tests administered to Cordell both during his incarceration at FMC Devens and thereafter support the existence of the conditions he is

currently denying. There is simply no support for the claim that the records were falsified.

Finally, Cordell contends that during his stay at FMC Devens the medical staff failed to provide him with "the emergency treatment of an outside hospital" when his body was "overtoxined" [sic] and in "extreme relentless pain." (Docket No. 43 at 1). However, the undisputed facts demonstrate that personnel at FMC Devens did take Cordell to outside facilities on various occasions. Again, Cordell has failed to establish either that any of the defendants actually failed to take him for treatment, or that if they failed to take him it was with the requisite intent. Therefore, Cordell has not shown that any of the defendants deprived him of his constitutional rights.

In sum, the record is replete with examples where FMC Devens personnel as well as outside personnel worked with Cordell in an attempt to stabilize his INR levels. His medical complaints were taken seriously, and he was treated both at FMC Devens and off-site. Any claim that the medical treatment Cordell received was so inadequate as to rise to the level of a constitutional violation fails as a matter of law and fact.

## IV. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the defendants' Motion for Summary Judgment (Docket

No. 37) be ALLOWED, and that the plaintiff's Motions for Summary Judgment (Docket Nos. 34, 43) be DENIED.[6]

/ s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).